In re GULF OIL/CITIES SERVICE TENDER OFFER LITIGATION.

W. ALTON JONES FOUNDATION, Wenonah Development Company, Foster and Foster, and Foster Bam and Alma Foster Davis, Both Individually and as Trustees for Four Testamentary Trusts Under the Wills of Fannie Estelle Foster, Millicent F. Foster, Sylvester M. Foster, and Warren W. Foster, Plaintiffs,

v.

CHEVRON U.S.A. INC., f/k/a Gulf Oil Corporation, Defendant.

Nos. 82 Civ. 5253 (MB), 87 Civ. 8982 (MBM).

United States District Court, S.D. New York.

Nov. 8, 1991.

Stephen D. Oestreich, Wolf, Popper, Ross, Wolf & Jones, New York City, Berger & Montague, Philadelphia, Pa., Bizar D'Alessandro Shustak & Martin, Goodkind, Labaton & Rudoff, Kaufman, Malchman, Kaufman & Kirby, Lowey, Dannenberg & Knapp, P.C., New York City, for class action plaintiffs.

Thomas Moreland, Jeffrey S. Trachtman, Ross N. Herman, Paul F. Occhiogrosso, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiffs W. Alton Jones Foundation, et al.

John W. Castles, III, Banks Brown, Frederic W. Parnon, John D. Henderson, Robert A. Becker, Lord Day & Lord, Barrett Smith, New York City, John S. Athens, Conner & Winters, Tulsa, Okl., John E. Bailey, Chevron U.S.A., Inc., Houston, Tex., William P. Casella, Narrowsburg, N.Y., for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

This opinion deals with three open issues in the captioned litigation: (i) whether Messrs. Lee, Hammer and Moyles—the directors of the entity designated as the "Purchaser" in the Offer to Purchase (the "Offer"), or the directors of Gulf, are the persons whose conduct is to be evaluated in determining whether Gulf properly invoked the "litigation out" in § 15(d) of the Offer; (ii) whether Harold Hammer, a former officer and director of Gulf, may testify during the defendants' case if he refuses to appear and testify during plaintiffs' case; and (iii) whether Gulf may rely at trial on evidence that it considered the materiality of expenses that could result from the remedies demanded by the FTC, and not merely the value of the assets or business to be divested or held separate, to prove that Gulf properly invoked the "litigation out" in § 15(d) of the Offer.

### I.

The first issue is a factual dispute to be resolved by the jury. The question is whether the three directors of the Gulf subsidiary created to effect the purchase, or the directors of Gulf, made the decision at issue. This dispute may be guided by the terms of the contract and by principles of agency, but the question of who were actually the effective decision makers is a question of fact.

### II.

Plaintiffs wish to call Harold Hammer during their case in chief. Hammer wishes to absent himself during plaintiffs' case, and then decide whether or not it is to his advantage to testify during defendants' case. Rule 611(a) of the Federal Rules of Evidence gives a trial judge the discretion to control the "mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth...." "[C]ourts have used their discretion under Fed.R.Evid. 611 to preclude parties who refuse to honor a reasonable request for production of a key witness subject to their control, and thereby force an opponent to use a deposition, from calling the witness to testify personally during their presentation of evidence." 1 Moore's Federal Practice, *Manual for Complex Litigation* 2d § 22.23 at 127 (1986 ed.). There is every reason to use such discretion in that fashion here. Hammer is a party to this case, and a central figure in the underlying events. If he elects to absent himself during plaintiffs' case, he will not testify at all, and plaintiffs will be free to comment upon his absence.

Gulf's argument that Hammer is not within its control rings hollow, and in any event is not dispositive. The interests of Gulf and of Hammer himself that would be served by having Hammer stay away during plaintiffs' case and then become available during defendants' case are indistinguishable one from the other. What helps Hammer helps Gulf, and vice versa. To the extent that Hammer is not directly controlled by Gulf, it is still not unfair to

tie Gulf's fortunes to Hammer's in this respect.

*First Nat'l. Bank and Trust Co. v. Hollingsworth*, 931 F.2d 1295, 1304–05 (8th Cir. 1991), relied upon by Gulf, is distinguishable. In that case, according to the appellate panel, "the trial court failed to provide any clear reason for imposing the drastic measure of barring the defendant from testifying." *Id.* at 1304. It appears that defendant in that case absented himself from the courtroom, plaintiff introduced defendant's deposition, and defendant then was barred from testifying during his own case. However, it is not at all clear from the appellate opinion whether at or before the time defendant's deposition was introduced he was given the choice of testifying on plaintiff's case or being barred. To the extent the opinion bears on the issue, it suggests that defendant never had that choice. Thus, the appellate panel said it could not "surmise from ... examination of the record any possible justification for sustaining the ruling," *id.* at 1304–05, and hypothesized that the testimony was excluded as cumulative or as the source of unnecessary delay. Here, defendant has a choice that is clear to him before trial, and it is by no means an unfair choice. He can have the benefit, if such it is, of displaying his demeanor and credibility as part of his own case and that of his codefendants, provided he gives plaintiffs the benefit of displaying the same goods during their case. Or he can let the jury decide the case without considering his demeanor and credibility either as part of plaintiffs' case or as part of his own.

### III.

◼ Finally, defendants have submitted what I hope is their last trial court gasp—which turns out, upon examination, to consist of two gasps—in aid of introducing evidence that Gulf considered the materiality of costs that might result from the FTC's order to divest or hold separate Cities' Lake Charles refinery, in addition to the materiality of the asset or business itself, in deciding to call off the deal. Gulf argues first that because I held in a prior opinion that the precondition for invoking the "litigation out"—the FTC's demand for the divestiture or the holding separate of a "material" portion of Cities' business, "taken as a whole"—is "ambiguous," *In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F.Supp. 712, 740 (S.D.N.Y.1989), that means Gulf should be free to rely on any evidence it wishes to explain how it viewed materiality. Here, Gulf is simply citing one word—"ambiguous"—without regard to the many others that are its context. What the parties meant by an asset or business of Cities that was "material" in relation to the other assets or business of Cities may have been left ambiguous, and will be the subject of proof at trial. But it is not at all ambiguous that what must be shown to be "material," whatever that term ultimately may be found to mean, must be an asset or business of Cities, not an expense to Gulf as a result of having to divest or hold separate an asset or business of Cities. The prior opinion makes this clear, if not sufficiently specific to have headed off Gulf's latest submission, by referring to measures of materiality such as "opportunity cost, replacement value and the like." Those are measures of the value of assets or the business that could be generated by those assets, not the cost of incidental expenses connected with divesting or maintaining those assets.

◼ Gulf's second argument is that it should be allowed to introduce evidence that it considered the alleged costs of complying with the FTC's divestiture or hold separate demand, apart from the value of the assets or business that were the subject of that demand, as "circumstantial evidence of Gulf's good faith." Mem. on Meaning of "Material" in Sec. 15(d), p. 10.

Good faith in the abstract, however, is not the issue. If Gulf was motivated by any judgment other than that the assets or business of Cities covered by the FTC order were material in relation to the remaining assets or business of Cities, then no measure of good faith will sustain that judgment because it was a judgment the Offer did not permit. If Gulf read the

Offer to provide what Gulf wished it had negotiated rather than what it did negotiate, that misreading is not a defense to the claim in this case.

The ruling reiterated in open court on October 18, 1991 will stand.

SO ORDERED.